[Crim. No. 918.   Department Two.—January 17, 1903.]

## THE PEOPLE, Respondent, v. GEORGE HOAGLAND et al., Defendants; ALBERT MEYERS, Appellant.

CRIMINAL LAW—GRAND LARCENY—INSUFFICIENCY OF EVIDENCE—TESTIMONY OF ACCOMPLICE.—A conviction for grand larceny cannot be sustained, where the only testimony relating to the offense charged is that of an accomplice, uncorroborated by any other evidence, and whose testimony, if believed, tended to show the absence of the union of act and intent required to be present in every crime.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. M. Mannon, Judge.

The facts are stated in the opinion.

Weldon & Held, for Appellant.

Tirey L. Ford, Attorney-General, A. A. Moore, Jr., Deputy Attorney-General, W. G. Poage, District Attorney, and J. Q. White, for Respondent.

CHIPMAN, C.—Albert Meyers, appellant, was informed against, with two other defendants, for the crime of larceny, committed by stealing a cow from one Lacy Gray in Trinity County, and driving said cow to Mendocino County and there selling her. Appellant was granted a separate trial and was found guilty. He appeals from the judgment of conviction and from the order denying motion for a new trial.

It is claimed that the evidence is insufficient to justify the verdict. We entirely agree with defendant in this contention. It appears that Gray missed a cow early in January, 1902, and employed one Vann to find her. Vann testified that he learned that some cattle had been driven out of the neighborhood. He took the trail and followed it to defendant French's house. The tracks did not follow well-known trails, but kept away from them over a rough country. He lost the tracks here, but afterwards found tracks, and traced them to Hale's place towards Covelo. He followed no farther, but afterwards found Gray's cow in Round Valley, where French had sold her and five other cattle to one Al Want. Witness Wyrick testified that he was trapping "on the opposite side of the ridge from Yellow Jacket's (French's) house," but had never seen the house. He testified in chief as follows: "I remember seeing some parties driving cattle out of that country last January. I was about 50 or 75 yards from them. They were driving five or six head. I only recognized them in my own mind; their backs were to me, and I thought that I recognized one as being Yellow Jacket, but the other one I could not tell. Yellow Jacket is an Indian. I had never seen Albert Meyers, the defendant, before. I have seen him since in Round Valley; it was at the time of the preliminary examination of this case. After seeing him in Round Valley I could not say positively that I could recognize him, because I did not know him. After seeing him in Round Valley I thought he was one of the parties driving the cattle. There were two parties driving the cattle. I met Bob Hoaglen about 150 yards from there." On cross-examination he testified:

"I am not positive that this defendant [Meyers] is the man that I saw out there that day driving cattle. I will not swear now positively that it is this defendant; only through my mind, that is all the way I formed an opinion. I never saw his face out there; I have never seen his face." He testified that he did not know the cattle; that Meyers and French were driving away from him with their backs to him some distance off; and he testified that he was not certain that French was one of the men. Witness Al Want testified that he bought the cattle about two miles from Covelo; that Hoagland came to him first and asked him if he wanted to buy some cattle, and that Yellow Jacket (French) was coming in that afternoon with some cattle. "I found Yellow Jacket and Albert Meyers with the cattle. They told me Yellow Jacket owned them. I bought the cattle, but had some conversation with the defendant about them." (What conversation does not appear.) There were six head. On cross-examination, he said that Meyers "did not take any part in the trading at all. He was quite a way off sitting on his horse. He said nothing about the sale. I did not pay him at any time any of the money for the cattle. I did not see him come—with the cattle." Defendant French testified: "I was in Trinity County last January, and Albert Meyers helped me drive some cattle away from Trinity County at that time. There were about five head that did not belong to me and one that did. . . . Albert Meyers and I drove them to Round Valley. We sold them. I think we got $100 for the five head and $20 for mine. I never knew much about an understanding that Albert Meyers was to get one fourth of the money. He did not say that he was to get one fourth. I think that Bob Hoaglen got the rest of the money. We were together all the time when we were driving the cattle from Trinity County to Round Valley. . . . I never noticed that this defendant got any of the money. Albert Meyers and me went out to Mad River to get Bob Hoaglen's cattle. We did get them and drove them in." On cross-examination, he testified: "We went out to get Bob's cattle. He told us to go with him and drive his cattle. He said he had some cattle on his place, and wanted us to go out and get them and drive them to town for him. He told Meyers the same thing. Bob said they were

his cattle. Meyers and I drove the cattle to Covelo. When I drove them down to Covelo I thought they were Bob Hoaglen's cattle. He told us they were his. . . . We drove them on a plain trail. . . . Bob Hoaglen owns some cattle. I know his cattle, but not his mark or brand.'' Witness Vann testified that he was familiar with all the brands of cattle in that neighborhood and with the owners of cattle, and that he never heard that Hoaglen had any cattle there.

If the cattle were stolen, French was an accomplice of Meyers. Section 1111 of the Penal Code provides: ''A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.'' There is no evidence aside from the testimony of the accomplice, and his testimony is far from conclusive, showing defendant's guilt, or even sufficient to arouse a well-founded suspicion of his guilt (*People* v. *Main*, 114 Cal. 632), and it is needless to add that evidence sufficient to raise a suspicion of guilt could not alone be a corroboration under section 1111, nor would it justify a conviction. (*People* v. *Main*, 114 Cal. 632.) If French's testimony is to be believed, both he and Meyers were told and believed the cattle belonged to Hoaglen, which would show absence of that union of act and intent required by section 20 of the Penal Code to be present in every crime.

It is advised that the judgment and order be reversed.

Haynes, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

McFarland, J., Henshaw, J., Lorigan, J.